**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LAURA CASTANEDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 50239 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| NATHAN HEINRICH and KEN ROSENKRANS AND SONS TRUCKING, INC. | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| ---------------------------------------------------------- | ) | |
| NATHAN HEINRICH and KEN ROSENKRANS AND SONS TRUCKING, INC. | ) ) ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RENE CASTANEDA, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

**OPINION & ORDER**

After sustaining injuries in a car accident while riding as a passenger, Plaintiff Laura Castaneda filed a complaint alleging negligence against the driver of the other vehicle, Defendant Nathan Heinrich, and his employer, Defendant Ken Rosenkrans and Sons Trucking ("Rosenkrans and Sons"). Heinrich and Rosenkrans and Sons subsequently filed a third-party complaint against Rene Castaneda who was driving Laura Castaneda, his wife, at the time of the collision. The third-party complaint claims that Third-Party Defendant Rene Castaneda solely and proximately caused Laura's injuries. Specifically, the complaint alleges that Rene Castaneda did not stop at the intersection's stop sign and failed to yield to oncoming traffic. Third-Party

Plaintiffs Heinrich and Rosenkrans and Sons also seek contribution from Rene Castaneda if they are found liable on the complaint. Rene Castaneda moves this Court to find that the settlement between himself and Laura Castaneda was made in good faith and to therefore dismiss the third-party complaint. Because the settling parties are married and the settlement amount is disproportionate to Rene Castaneda's likely share of fault in the accident, the Court denies the motion for a good faith finding [29].

## BACKGROUND

On October 1, 2017, around 1:56 a.m., Rene Castaneda was driving northbound on Paw Paw Road in Willow Creek Township, Illinois. His spouse, Laura Castaneda, was a passenger in his vehicle. When he reached the intersection of Paw Paw Road and US-30, Rene Castaneda turned left onto westbound US-30. Although the intersection had a stop sign for northbound traffic on Paw Paw Road, US-30 did not have any traffic signals. Also approaching that intersection was Heinrich, traveling eastbound on US-30. Heinrich was driving a 2016 Volvo T630 semi-tractor with a box trailer that Rosenkrans and Sons owned. When Rene Castaneda executed the left turn, his vehicle collided with Heinrich's vehicle. As a result of the collision, Laura Castaneda suffered injuries. Sheriff Robert Salazar reported to the scene of the accident, and he later testified that Rene Castaneda told him that he did not see a stop sign. Doc. 34 at 36 (Salazar Dep. Tr. 12:21–13:3, 32:19–22). Although Rene Castaneda testified that he stopped at the stop sign before turning left, he pleaded guilty to disobeying a stop sign. Doc. 34 at 29.

On September 23, 2019, Laura Castaneda filed a complaint against Heinrich and Rosenkrans and Sons in this Court, alleging negligence. Laura Castaneda subsequently filed an amended complaint because the original complaint contained deficient allegations in support of diversity jurisdiction. On January 8, 2020, Heinrich and Rosenkrans and Sons filed a third-party

complaint against Rene Castaneda. That complaint alleges that Rene Castaneda's negligence was the sole and proximate cause of Laura Castaneda's injuries.[1] Their complaint also requests that if the Court enters judgment against them, the Court also enter judgment for contribution in their favor against Rene Castaneda, in an amount commensurate with his pro rata share of fault for causing injuries to Laura Castaneda, pursuant to 740 Ill. Comp. Stat. 100/2.

On June 24, 2020, Rene Castaneda filed a motion asking the Court to find that a $5,000 settlement between himself and Laura Castaneda was made in good faith under the Illinois Joint Tortfeasor Contribution Act ("Contribution Act") and to therefore dismiss the third-party complaint. In his motion, Rene Castaneda alleges that Wadena Insurance Company ("Wadena") insured the vehicle he was driving the night of the incident. The Wadena policy provides bodily injury liability coverage of $100,000 per person, but it does "not provide Liability Coverage for any 'insured' for 'bodily injury' to you or any 'family member'." Doc. 34 at 8, 14. Accordingly, the policy does not provide liability insurance to Rene Castaneda for the alleged injuries to his wife, Laura Castaneda. Previously, Laura Castaneda made an uninsured motorist claim against Wadena, Wadena paid her $20,000,[2] and Rene Castaneda signed a release in favor

---

[1] In a footnote, Rene Castaneda incorrectly suggests that the third-party complaint destroys diversity because Laura and Rene Castaneda are both residents of Iowa. Comparatively, the Court has jurisdiction over the third-party complaint. *See Fid. & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir. 1983) ("[I]t is clear that if a case is properly within the diversity jurisdiction and the defendant files a third-party complaint against a resident of the plaintiff's state the court does not lose jurisdiction over the plaintiff's claim."); *see also* Wright & Miller, Federal Practice & Procedure § 1444 (3d ed.) ("[I]f A of State X sues B of State Y and B attempts to implead C of State Y (or of State X), the courts will accept jurisdiction over the impleader claim.").

[2] Both parties agree that when Laura Castaneda filed an insurance claim with Wadena for injuries sustained in the collision, Rene Castaneda was an uninsured motorist for purposes of the policy due to the family member exclusion. The policy's uninsured motorist limit is $100,000. Doc. 34 at 8. Rene Castaneda contends that Laura Castaneda accepted a $20,000 settlement "[b]ecause of the step down provision upheld" in *Krause v. Krause*, 589 N.W.2d 721 (Iowa 1999). Doc. 35 at 2. However, Rene Castaneda does not identify a step-down provision in the Wadena policy and the Court cannot identify any such provision. *See Ringelberg v. EMC Ins. Grp., Inc.*, 660 N.W.2d 27, 29 (Iowa 2003) (affirming application of step-down provision where "the agreement clearly limit[ed] uninsured-motorist coverage to

3

of Wadena. Wadena also retained defense counsel to represent Rene Castaneda in negotiations with Laura Castaneda, though it asserts that it was not required to do so because Rene Castaneda had no coverage available to him under the insurance policy. Rene and Laura Castaneda settled for the amount of $5,000, and the parties entered into a release in favor of Rene Castaneda and Wadena.

## ANALYSIS

Rene Castaneda has moved for the Court to find that the $5,000 settlement between himself and Laura Castaneda is a good faith settlement and to therefore dismiss the third-party complaint. Third-Party Plaintiffs respond that the settlement does not qualify as a good faith settlement because it would shift a disproportionately large and inequitable portion of liability to them, especially in light of Rene Castaneda's significant share of the fault.

The Contribution Act provides a statutory right of contribution in actions "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property." 740 Ill. Comp. Stat. 100/2(a). This right of contribution "exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." 740 Ill. Comp. Stat. 100/2(b). When a tortfeasor settles in good faith with a claimant, it discharges that tortfeasor "from all liability for any contribution to any other tortfeasor." 740 Ill. Comp. Stat. 100/2(c)-(d). The only limit on the parties' right to settle and thereby extinguish contribution liability is the requirement of good

---

the minimum limit allowed by law based on the absence of liability coverage due to a policy exclusion"); *Krause*, 589 N.W.2d at 723 (endorsement to the policy reduced the amount of uninsured motorist coverage "to an amount 'that does not exceed the limit specified in the financial responsibility law of Iowa'"). Therefore, it is unclear why a step-down provision would apply here. However, this issue is irrelevant to resolution of the motion pending before this Court. *Cf. LaJeunesse v. Ford Motor Co.*, 642 F. Supp. 2d 835, 839, 944 (N.D. Ill. 2009) (good faith settlement where passenger had claim for uninsured motorist coverage arising out of her husband's allegedly negligent driving and the insurance company paid the full limits available under the underinsured motorist coverage).

faith. *See Dubina v. Mesirow Realty Dev., Inc.*, 197 Ill. 2d 185, 191 (2001). The burden is on the settling parties to demonstrate that the settlement was made in good faith. *Johnson v. United Airlines*, 203 Ill.2d 121, 129 (2003). If the settling parties make a preliminary showing, the burden shifts to the challengers to prove the absence of good faith by a preponderance of the evidence. *See id.* at 132.

The Contribution Act serves two public policy objectives: encouragement of settlement and equitable apportionment of damages amongst tortfeasors. *See id.* at 133 (citation omitted). Although the Contribution Act does not define "good faith", the Illinois Supreme Court has explained that a settlement is not in good faith if: "the settling parties engaged in wrongful conduct, collusion, or fraud;" or "the settlement conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *Id.* at 134. To determine whether a settlement satisfies the good faith requirement, Illinois courts consider: (1) "whether the amount paid by the settling tortfeasor was within the reasonable range of the settlor's fair share;" (2) "whether there was a close personal relationship between the settling parties;" (3) "whether the plaintiff sued the settlor;" and (4) "whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement." *LaJeunesse*, 642 F. Supp. 2d at 838 (quoting *Wreglesworth v. Arctco, Inc.*, 317 Ill. App. 3d 628, 634 (2000) (internal quotation marks omitted)). No single factor is determinative; the Court considers all of the surrounding circumstances. *Dubina*, 197 Ill. 2d at 191.

Here, the Castanedas made a preliminary showing that the settlement was made in good faith because Rene Castaneda attached the settlement agreement and release to his reply brief. *See* Doc. 35 at 21–25; *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 24 ("This initial burden is met with proof of a legally valid settlement agreement." (citation omitted)). Nonetheless, Third-

5

Party Plaintiffs argue that the settlement shifts a disproportionately large portion of the liability to them considering Rene Castaneda's fault in the accident. According to Third-Party Plaintiffs, Laura Castaneda has submitted nearly $90,000 in medical expenses and demanded $250,000. Although the proposed $5,000 settlement between Rene and Laura Castaneda is a minuscule portion of either amount, this is not the end of the matter. Instead, the Court must evaluate this settlement amount alongside the probability of recovery, defenses raised, and Rene Castaneda's potential liability. *Johnson*, 203 Ill. 2d at 138 ("[T]he nominal amount of the settlement, viewed in light of the circumstances surrounding this case, is not an indication that the settlement was made in bad faith."). Third-Party Plaintiffs offer evidence demonstrating that Rene Castaneda had a high proportion of fault in the accident. During his deposition, Rene Castaneda testified that although he had a stop sign, the road on which he turned did not have stop signs for vehicles approaching from his left or right. Doc. 34 at 23 (Rene Castaneda Dep. Tr. 24:21–25:3, 27:10–17). Rene Castaneda also did not see the semi-tractor and trailer before the impact. *Id.* at 25 (Rene Castaneda Dep. Tr. 37:20–24). Additionally, when asked if the accident was his fault, Rene Castaneda testified that "I believe yes, had [Heinrich] not been speeding." *Id.* at 24 (Rene Castaneda Dep. Tr. 30:16–31:1). Additionally, Castaneda pleaded guilty to disobeying a stop sign, despite testifying that he stopped at the stop sign before turning left. Doc. 34 at 29. Further, Robert Salazar, the sheriff who reported to the scene of the accident, testified that Rene Castaneda told him that he did not see a stop sign. Doc. 34 at 36 (Salazar Dep. Tr. 12:21–13:3, 32:19–22). Taken together, this evidence demonstrates that Rene Castaneda likely shares a high proportion of fault for the accident. The Court cannot conclude that a settlement for approximately 5% of the associated medical costs is within the reasonable range of Rene Castaneda's potential proportional liability. *See Mercola v. Abdou*, 223 F. Supp. 3d 720, 732

6

(N.D. Ill. 2016) (no good faith settlement where "the settlement [was] paltry compared to the asserted liability"); *compare Stickler v. Am. Augers, Inc.*, 303 Ill. App. 3d 689, 694 (1999) (settlement that released the third-party defendant from liability for "relatively nominal consideration without regard for its relative culpability" and shifted nearly half of its statutory liability to another defendant, while dismissing three other defendants, "conflict[ed] with the policy of the Contribution Act which encourages equitable apportionment of damages"), *and Warsing v. Material Handling Servs., Inc.*, 271 Ill. App. 3d 556, 561 (1995) (settlement of $1,000 was disproportionate to the third-party defendant's fault where the third-party plaintiff asserted that the third-party defendant's actions were the primary cause of the accident), *abrogated by Johnson*, 203 Ill. 2d 121, *with Palacios v. Mlot*, 2013 IL App (1st) 121416, ¶ 33 (affirming the trial court's conclusion that $3,000 settlement was made in good faith where the plaintiff demanded $24,000 and evidence did not support that the settling party was a primary or substantial cause of the accident).

     Additionally, the relationship between the settling parties calls into question the good faith nature of the settlement. Rene and Laura Castaneda are married. They have agreed to settle for a minimal amount that Wadena offered to cover. Rene Castaneda may be responsible for directly paying any amount beyond this, in turn directly negatively impacting Laura. *See Achi v. TIA Transp., Inc.*, No. 16-CV-11632, 2017 WL 5890875, at *4 (N.D. Ill. Nov. 29, 2017) (the fact that the settling parties were married called into question whether the settlement was made in good faith, as recovery from the husband "would likely be to [his wife's] immediate detriment"); *cf. Palacios*, 2013 IL App (1st) 121416, ¶ 25 (there was no evidence that the parties had a close relationship, as the testimony established they were only coworkers). Moreover, Laura Castaneda did not originally sue her husband; Third-Party Plaintiffs filed a complaint

7

against Rene Castaneda as Third-Party Defendant. This also weighs against finding there is a good faith settlement.

Rene Castaneda relies on *Antonicelli v. Rodriguez* in support of his argument that the Court should find that the settling parties made a good faith settlement. There, the Illinois Supreme Court found that the non-settling defendants failed to meet their burden in showing that the settlement was not in good faith. *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 32. However, as discussed, a court's good faith determination depends on the totality of the circumstances. *Id.* ¶ 25. *Antonicelli* does not identify a close relationship between the settling parties nor that the settling party was responsible for a significant amount of the fault. *Id.* ¶¶ 25, 26. The other cases that Rene Castaneda cites are similarly unpersuasive. *Miranda v. Walsh Group* determined that the trial court did not abuse its discretion in finding that the parties settled in good faith, in part because the plaintiff would be unlikely to recover any amount above the settling tortfeasor's insurance policy limit. 2013 IL App (1st) 122674, ¶ 12. In *Pecoraro v. Balkonis*, the non-settling defendant "[did] not allege anything beyond the inadequacy of the settlement amount," with the court noting that a small settlement amount alone does not demand a bad faith finding. 383 Ill. App. 3d 1028, 1039 (2008). In *Lard v. AM/FM Ohio, Inc.*, the court explained that the settling defendants' financial circumstances made the probability of the plaintiff recovering against them slim and the challenger did not offer any evidence of wrongful conduct. 387 Ill. App. 3d 915, 931–32 (2009). Overall, Rene Castaneda does not explain why these cases demand a good faith finding here. And he does not indicate that Plaintiff will be unable to recover against him.

Although a finding of good faith would serve the Contribution Act's underlying policy objective of encouraging settlements, it would not serve the policy objective of equitable

8

apportionment of damages among tortfeasors. Third-Party Plaintiffs have demonstrated by a preponderance of the evidence that the settlement amount is not commensurate with Rene Castaneda's fault, and the settling parties' close relationship further precludes a good faith finding. Accordingly, the Court declines to enter a good faith finding and approve the proposed settlement.[3]

## CONCLUSION

For the foregoing reasons, the Court denies Rene Castaneda's motion for a good faith finding and dismissal of the third-party complaint [29].

Dated: September 16, 2020

                                                SARA L. ELLIS
                                                United States District Judge

---

[3] The parties dispute whether there would be liability coverage available to Rene Castaneda for Third-Party Plaintiffs' contribution claim against him. Third-Party Plaintiffs contend that the policy's family member exclusion does not apply because any payment would be made to them, rather than Laura Castaneda. Rene Castaneda argues that there is no liability coverage because Third-Party Plaintiffs seek contribution for injuries over which there is no coverage due to the family member exclusion. Because the Court has found that the settlement was not made in good faith, the Court need not decide whether liability coverage would be available for purposes of resolving the pending motion. Neither party has provided a conflict of law analysis as to the applicable law in this case, and both parties cite minimal law in support of their positions. Confusingly, Rene Castaneda discusses the Illinois Insurance Code, which provides: "A provision in a policy of vehicle insurance . . . excluding coverage for bodily injury to members of a family of the insured shall not be applicable when a third-party acquires a right of contribution against a member of the injured person's family." 215 Ill. Comp. Stat. 5/143.01(a). This provision directly contradicts Rene Castaneda's argument because it indicates that the family member exclusion is inapplicable when a third-party makes a contribution claim. *See Cincinnati Ins. Co. v. Estate of Chee*, 826 F.3d 433, 436 (7th Cir. 2016) (Illinois law requires an exception to a family member exclusion "[w]hen a third party acquires a right of contribution against you or any relative"); *LaJeunesse*, 642 F. Supp. 2d at 840 (Illinois law requires exception to the household exclusion when a third-party acquires a right of contribution against the insured or a family member).